**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NUMBER.:_____

CORINNA PINA-BELMAREZ,

PLAINTIFF,

v.

THE BOARD OF COUNTY COMMISSIONERS OF WELD COUNTY COLORADO, THE OFFICE OF THE WELD COUNTY CORONER/MEDICAL EXAMINER, PATRICK C. ALLEN, M.D. in his individual capacity, MARK WARD, in his individual capacity, and JAMES A. WILKERSON IV, M.D. in his individual capacity.

DEFENDANTS.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

COMES NOW, Plaintiff, Corinna Pina-Belmarez, by and through undersigned counsel of the law firm Hagen & Melusky, Inc., 1613 Pelican Lakes Point, Windsor, Colorado, telephone 970.686.6618, files this Complaint and Jury Demand against Defendants THE BOARD OF COUNTY COMMISSIONERS OF WELD COUNTY COLORADO, THE OFFICE OF THE WELD COUNTY CORONER/MEDICAL EXAMINER, PATRICK C. ALLEN, M.D. in his individual capacity, MARK WARD, in his individual capacity, and JAMES A. WILKERSON IV, M.D. in his individual capacity.

1

This action is brought for relief arising from Defendant's interference with Plaintiff's rights under the Fair Labor Standard Act of 1938 § 29 U.S.C.A. § 201 *et seq*., Colorado Wage Claim Act C.R.S.A. § 8-4-101 et seq., Violation of First Amendment Freedom of Speech, American Disability Act pursuant to 42 U.S.C. §12112, Family and Medical Leave Act 29 U.S.C § 2601 *et.seq*., and Public Policy Wrongful Discharge Claim, 42 U.S.C. § 1983, Breach of Contract, Violation of Equal Protection and Title VII of the Civil Rights Act.

Plaintiff hereby alleges and avers as follows:

## I.

## PARTIES

1. Plaintiff, Corinna Pina-Belmarez, hereinafter ("Ms. Belmarez" or "Plaintiff"), an individual, is a resident of Weld County Colorado.

2. Defendant, Board of County Commissioners of Weld County, hereinafter ("BOCC"), are a corporate and political body under the laws of Colorado with a principal place of business at 1150 O Street, Greeley, Colorado.

3. Defendant, The Office of the Weld County Coroner/ Medical Examiner, hereinafter ("WCCO") is a department of Weld County with a principal place of business located at 905 10th Avenue Greeley, Colorado.

4.   Defendant, Patrick C. Allen, M.D., hereinafter ("Dr. Allen" or "Defendant Allen"), was the appointed Medical Examiner/Coroner. Dr. Allen is a resident of Larimer County Colorado.

5.   Defendant, Mark Ward, hereinafter ("Mr. Ward" or "Defendant Ward") was the Weld County Chief  Deputy Coroner and reported directly to Dr. Allen and Dr. Wilkerson during the relevant time frame.

6.   Defendant, James A. Wilkerson IV, M.D., hereinafter ("Dr. Wilkerson" or "Defendant Wilkerson") was the appointed Medical Examiner/Coroner.  Dr. Wilkerson is a resident of Larimer County Colorado.

7.   Dr. Wilkerson was removed as the Department Head/Coroner with the appointment of Mr. Ward.

8.   Mr. Ward was appointed Coroner on or about July of 2011.

## II.

## JURISDICTION

9.  Jurisdiction of this Court is invoked pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1332(d)(2) which grants original jurisdiction to the Federal District Court in actions which arise under alleged violations of the Fair Labor Standards Act, hereinafter ("FLSA").

10. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §§ 1983 and 1988, and 18 U.S.C. §§ 1331 and 1343 which grants original jurisdiction to the Federal District Court in actions which arise under the First Amendment to the United States Constitution.

11. This Court has jurisdiction over the alleged state common law claims pursuant to 28 U.S.C. §1367.

12. This Court has jurisdiction pursuant to the enforcement provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.,* as amended by the Civil Rights Act of 1991.

## III.

## VENUE

13. The unlawful employment practices alleged below were committed within the State of Colorado.  Accordingly, venue lies in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391(b).

## IV.

## GENERAL ALLEGATIONS

14.   Plaintiff hereby incorporates the allegations in paragraphs 1-13 above as if fully set forth herein.

15. From January 1, 1976 to present, Weld County has operated as a Home Rule County, pursuant to the Weld County Home Rule Charter, hereinafter ("Charter").

16. The BOCC is the statutory head of the Weld County government.

17. The BOCC consists of five individuals.  Two of the Commissioners are elected at large, the other three are elected from the district in which they reside.

18. Prior to the appointment of Mr. Ward, the Weld County Coroner was a non-County employee forensic pathologist appointed by the Board of County Commissioners.

19. Upon information and belief Mr. Ward is the only non-medical doctor to be appointed as Coroner by the BOCC.

20. Pursuant to Section IX of the Charter the Coroner must appoint a Chief Deputy to Act in his or her absence, disability, or in case of a vacancy in the office.

21. The Chief Deputy is to perform all the duties of Coroner during the absence or until the Coroner vacancy if filled.

22. Section 3-2-10 of the Weld County Code, hereinafter ("Code") states as follows: "The County strives to attain complete compliance with all provisions of equal employment opportunity laws.  Recruiting, selection and advancement of employees will be on the basis of their relative ability, knowledge, skills and other relevant factors."

23. Section 3-3-20(b) of the Code states as follows: "No department head or elected official shall initiate or administer disciplinary action against an employee on account of the employee's reporting misconduct…"

24. Weld County employs approximately 1,375 employees.

25. From approximately 2006 to 2010 Dr. Patrick C. Allen served as the appointed Weld County Coroner.

26. From Approximately January 2011 until June 2011, Dr. James A. Wilkerson IV serves as the appointed Weld County Corner.

27. From Approximately May 2009 to June 2011 Mr. Mark Ward served as the Chief Deputy Coroner.

28. Plaintiff began her employment with the WCCO on December 9, 1993 as a part-time investigator.

29. Plaintiff applied for and was promoted to Chief Medicolegal Investigator with WCCO, a full time position.

30. Plaintiff held the position of Chief Medicolegal Investigator with WCCO until approximately May of 1999.

31. In May 1999 Plaintiff's position with WCCO was changed to Coroner Investigator II.

32. On or about December 16, 2001 Plaintiff's position with WCCO was reclassified to Coroner Investigator II and her hours were reduced to 30 hours per week.

33. On or about December 16, 2002 Plaintiff' position with WCCO was reclassified to Medicolegal Investigator (MI) and her hours were increased to 40 hours per week.

34. Defendant continued her employment with WCCO as a MI until her employment was terminated.

35. WCCO male employees were not subject to the same level of strict scrutiny of their work performance by supervisors as experienced by Plaintiff.

36. Injured WCCO male employees were permitted to continue working with weight lifting restrictions without recourse.

37. Plaintiff performed her job to the satisfaction of Defendants.

38. Plaintiff was terminated from her employment with WCCO as a MI on or about September 17, 2010.

39. Plaintiff was classified as a non-exempt employee as defined by the FLSA pursuant to letter from Weld County dated August 30, 2001.

40. When a death occurs in Weld County Monday through Friday between the hours of 9:00 am and 4:30 pm, hereinafter ("Office Hours") the MI scheduled is notified by a telephone call or a page.  The call or page is typically generated by Weld County Dispatch.

41. MI's are paid an hourly wage for work performed during Office Hours.

42. Deaths in Weld County do not always occur during the WCCO's Office Hours.

43. To investigate deaths occurring outside of the WCCO's Office Hours, the WCCO's schedules MI's on-duty as either a "Primary" or "Backup".

44. Plaintiff was scheduled to work varied shifts including 5, 24-hour Primary shifts; 4, 24-hour Backup shifts and various administrative shifts as scheduled.

45. When a death occurs in Weld County on a weekend or Monday through Friday between the hours of 4:31 pm through 8:59 am the Primary on-duty MI is notified by a telephone call or a page.  The call or page is typically generated by Weld County Dispatch.

46. WCCO provides a pager, cellular telephone, and vehicle to the MIs for use while on-duty as a Primary or Backup.

47. While on-duty the county vehicle is the MI's primary work premise.   The vehicle is equipped to respond to a death scene, investigate a death and transport the body.

48. While on-duty the MI's secondary work premises are the WCCO for follow-up and report writing, the WCCO morgue for the storage of the body and the McKee Medical Center morgue for the autopsy.

49. The on-duty MI is to respond to the Dispatch call or page as soon as they can, but no later than 5 minutes after receiving the call or page.

50. The Primary on-duty MI is to respond by calling back Dispatch to determine if the death is a case for the WCCO's office.

51. If the death is not a case or the WCCO's office the MI does not need to travel to the scene of the death to remove the body and conduct an investigation at the scene.

52. If the death is a case for the WCCO's the MI is to be in route to the scene of the death no later than 20-30 minutes after the telephone discussion with dispatching agency.

53. The MI is to arrive at the scene of the death as soon as possible.

54. The on-duty MI must maintain a high state of readiness including hygiene, having appropriate attire to respond to call, and WCCO vehicle prepared and fully fueled.

55. Upon information and belief, an on-duty MI's failure to respond to a Dispatch call or page within 5 minutes results in discipline.

56. Upon information and belief, an on-duty MI's failure to be in route to a death scene within 30 minutes after the telephone discussion with dispatch results in discipline.

57. Upon information and belief, an on-duty MI's failure to arrive at the scene of a death as soon as possible results in discipline.

58. The on-duty MI must remain in close proximity to the county.

59. The on-duty MI must remain in close proximity to the county vehicle to be used by the MI in responding to call.

60. The response times outlined above, upon information and belief, were formalized and implemented in August 20, 2009 by written guidelines for the WCCO and distributed to the WCCO employees. *See Attached Exhibit "A"*.

61. During the same time period that a MI is designated as Primary on-duty, another MI is designated for the same time period as the Backup on-duty.

62. If the Primary on-duty MI does not respond to the call or page from Dispatch, or is already committed to a case, the Backup is then notified.

63. When the Backup is notified the Backup must follow the same duties, obligations, and response times as the Primary.

64. The WCCO pays on-duty time spent by the MI investigating a death.

65. The WCCO does not pay on-duty time to the MI engaged to wait.

66. The BOCC, after repeated requests to do so, has not authorized the payment of any kind for the Primary or Backup MI's on-duty time.

67. The WCCO, after repeated requests to do so, has not authorized the payment of any kind for the Primary or Backup MI's on-duty time.

68. Due to the required response times while on-duty Plaintiff did not engage in leisurely or social activities.

69. Due to the required response times while on-duty Plaintiff did not engage eating dinner at a restaurant with family or friends.

70. Due to the required response times while on-duty Plaintiff did not engage in watching a movie at a movie theater with family or friends.

71. It is not uncommon for the MI to be up for 18-30 consecutive hours creating unsafe working conditions and leaving the MI in such a state of exhaustion that the following day cannot be utilized for the benefit of the MI.

72. Due to the required response times while on-duty Plaintiff did not engage in trips out of town with family or friends.

73. Due to the required response times while on-duty Plaintiff often times did not ride in the same vehicle as family or friends because MI's are to respond to the scene of a death in the WCCO vehicle.

74. The Weld County Code prohibits family or friends from riding in a county vehicle.

75. Prior to Plaintiff's termination, MI's were required to work 10 to 12, 24-hour shifts per month.

76. In 2009 Plaintiff received an average of 12 case related calls per Twenty-Four hour period as the on-duty MI.

77. In 2010 Plaintiff received an average of 14 case related calls per Twenty-Four hour period as the on-duty MI.

78. 29 U.S.C.A. 207(7)(o) permits a public agency employer to provide their employees with compensatory time, hereinafter ("Comp Time"), off in lieu of cash payments for overtime worked.

79. The BOCC created and the WCCO circulated a compensation time agreement to be signed by the WCCO employees.

80. Plaintiff signed the compensation time agreement on or about November 30, 2009.

81. On any given day a dispatched call for an on-duty MI could result in more than 10-20 hours of compensatory time.

82. The WCCO compensation agreement limited accumulation of compensation time to 80 hours.

83. On or about the first quarter of 2009 Plaintiff informed the WCCO that she wanted to receive monetary compensation for her accumulated compensation time.

84. On or about June 16, 2009 the BOCC decided to pay off the WCCO accumulated compensation time resulting in approximately $30,000 being paid to all WCCO Investigators.

85. Of the approximate $30,000 of comp time payments made to WCCO employees, Plaintiff received approximately $9,924.88 before taxes.

86. Three days later, on June 19, 2009 Plaintiff received a Performance Correction Notice.

87. On or about July 15, 2009 Plaintiff received an additional Performance Correction Notice.

88. Shortly thereafter the WCCO implemented a policy stating "No employee shall accumulate more than 80 hours of comp time.  If any overtime worked would result in an accumulation of more than 80 hours total of unused comp time, than that overtime will be paid at the applicable overtime rate."

89. WCCO supervisors implemented limits of 30 to 40 hours of accumulated Comp Time on Plaintiff in order to avoid accumulation of Comp Time and possibly paying overtime.

90. The WCCO implemented an additional policy stating "Comp time use must be scheduled in advance with the employer's supervisor in the same manner as a vacation request. Comp time use shall not conflict with the work requirements of the division."

91. On or about September 22, 2009 Plaintiff was instructed by her supervisor, Defendant Ward to notify him when she had worked 32 hours per week.

92. The WCCO policy states "Supervisors may direct employees to use their accumulated comp time because of weather or any other non-work related conditions."

93. WCCO supervisors sent Plaintiff home from work with little or no notice, to avoid overtime, with a total disregard of the work related conditions in the WCCO.

94. Plaintiff has voiced concerns over the last two years regarding compensation for on-duty time and the application of the Comp Time Agreement to Defendant Ward, Defendant WCCO, Defendant BOCC.

95. On or about June 24, 2009 Plaintiff went on FMLA leave until July 2, 2009.

96. On May 3, 2010 Plaintiff went on FMLA until June 14, 2009.  Upon returning to work Plaintiff was placed on 30 lbs., weight lifting restriction.  Defendant Ward did not permit

Plaintiff to return to full duty until the weight lifting restriction had been removed on or about July 12, 2010.

97. On August 20, 2010 Plaintiff was placed on FMLA by the WCCO due to a work related injury.

98. On or about September 8, 2010 Plaintiff was incorrectly informed by Dawn Buck that Plaintiff had exhausted her FMLA time off and needed to schedule a physical to take and pass prior to returning back to work.

99. Plaintiff's Workers Comp Dr. Charbonneau advised against taking a fit for duty test while Plaintiff was recovering from her work related injury.

100. On or about September 17, 2010, Plaintiff was terminated from employment with the WCCO for allegedly exhausting her FMLA time off and for Plaintiff's alleged inability to perform the essential duties of her job.

101. On or about June, 29, 2010 the WCCO by and through Defendant Ward meet with outside specialists to amend the description and essential job functions for a MI.

102. Upon information and belief, only the job description and essential job functions for an MI were changed.

103.     On or about June 4, 2010 the WCCO circulated the amended MI job description

and essential job function.

104.     The amendment to the MI job description and essential job functions include the

following "Must be able to lift, carry, drag, or push, an average body weight of 150 to

200 lbs., both alone and with help."

105.     In Plaintiff's 17 years with the WCCO she at no time without assistance had to

lift, carry, drag, or push, an average body weighing 150 to 200 lbs.

106.     On or about August 6, 2010 Plaintiff suffered a work related injury.

107.     The August 6, 2010 injury consisted of a right lumbosacral strain and right ankle

sprain.

108.     The August 6, 2010 injury resulted in Plaintiff's physician placing her on

modified duty and lifting restriction of 25 lbs., or less.

109.     On or about August 19, 2010 Plaintiff provided the WCCO with a list of

reasonable accommodations that would allow her to continue employment with the

WCCO until she was able to fully recover from her injury.

110.     The WCCO declined to provide Plaintiff with reasonable accommodations.

111.     Upon information and belief, a male employee of the WCCO was placed on a

lifting restriction and placed on light duty.  The injured male employee was not

disciplined or terminated as a result of his lifting restriction.

112.     The reasons given for Plaintiff's termination on September 17, 2010 were "(1)

Exhaustion of FMLA time and (2) unable to perform the essential function of her position

as MI without reasonable accommodations."

## V.

### EXHAUSTION OF ADMINISTRATIVE PROCEDURES

113.     Plaintiff hereby incorporates the allegations in paragraph 1-112 above as if fully

set forth herein.

114.     Plaintiff's employment was terminated by Defendants on September 17, 2010.

115.     A Charge was filed with the Colorado Civil Rights Division on March 8, 2011,

Charge No. E20110347.

116.      The Colorado Civil Rights Division issued a Notice of Right to Sue on September 8, 2011.  *See attached Exhibit "B".*

117.      This Complaint was timely filed with respect to the ninety day filing requirement contained in the Right to Sue letter.

## VI.

## NOTICE GIVEN PURSUANT TO COLORADO GOVERNMENTAL IMMUNITY ACT

## C.R.S. § 24-10-109

118.      Plaintiff hereby incorporates the allegations in paragraph 1-117 above as if fully set forth herein.

119.      Plaintiff's employment was terminated by Defendant on September 17, 2010.

120.       Plaintiff provided notice of tort claims to Defendant.

121.      Plaintiff timely submitted notice of tort claims to Defendant satisfying the requirement of C.R.S. § 24-10-109.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF

**(Violation of the Fair Labor Standards Act
Overtime Pay Requirements)**

122.      Plaintiff hereby incorporates the allegations in paragraph 1-121 above as if fully

set forth herein.

123.      FLSA requires employers to pay their non-exempt employees overtime for all

hours worked in excess of forty (40) hours per week.

124.      FLSA requires non-exempt employees to receive 1 ½ times pay for hours worked

in excess of forty (40) hours per week.

125.      Plaintiff employment with the WCCO did not qualify for an exemption under the

FLSA.

126.      Plaintiff was scheduled to work varied shifts including 5, 24-hour primary shifts;

4, 24-hour back up shifts and various administrative shifts as scheduled.

127.      Plaintiff was not paid overtime for all hours worked in excess of forty hours per

week while employed with the WCCO.

128.     Defendants BOCC and WCCO failure to compensate Plaintiff after numerous

requests to do so constitutes a knowing and willful violation of the FLSA overtime

requirements.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF

### (Violation of the Fair Labor Standards Act
### Compensation Time)

129.     Plaintiff hereby incorporates the allegations in paragraph 1-128 above as if fully

set forth herein.

130.     Plaintiff entered into a Comp Time Agreement with Defendant WCCO on or

about November 30, 2009.

131.     After voicing concerns regarding the Comp Time Agreement Plaintiff was

scheduled to work less desirable Office Hour shifts.

132.     After voicing concerns regarding the Comp Time Agreement Plaintiff was

scheduled to work less desirable on-duty Primary and Backup shifts.

133.    After voicing concerns regarding the Comp Time Agreement Plaintiff arbitrarily and with little or no notice was sent home from work without regard to Plaintiff's mounting work load.

134.    The accumulation of Comp Time was used by Defendant's to negatively impact Plaintiff's annual employment evaluations.

135.    Defendant's violation of the Comp Time accumulation was willful and wanton.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF

### (Violation of the Fair Labor Standards Act
### Retaliation)

136.    Plaintiff hereby incorporates the allegations in paragraph 1-135 above as if fully set forth herein.

137.    29 U.S.C. § 215(a)(3) prohibits retaliation against an employee for asserting FLSA claims.

138.    Plaintiff requested a cash payment of her comp time on or about May/June 2009.

139.    Shortly after receiving a cash payment for her accumulated comp time, Plaintiff received several work performance correction notices.

140.     Plaintiff was then forced to sign a compensation time agreement with the WCCO.

141.     Plaintiff was instructed to keep her comp time levels below the allowance agreed upon in the comp time agreement.

142.     Plaintiff was required to report to her supervisors when she was approaching 40 hours per week.

143.     Plaintiff was arbitrarily sent home from work to keep her from accumulating comp time.

144.     After informing the WCCO Plaintiff no longer wished to be constrained by the comp time agreement, Plaintiff was arbitrarily disciplined.

145.     As a result of Plaintiff's voicing a FLSA concern to the WCCO and BOCC Plaintiff's employment was terminated.

## PLAINTIFF'S FOURTH CLAIM FOR RELIEF

### (Violation of Colorado Wage Claim Act ("CWCA")-Overtime)

146.     Plaintiff hereby incorporates the allegations in paragraph 1-145 above as if fully set forth herein.

147.     Defendants are required to pay Plaintiff for all hours worked including overtime at a rate of 1 and ½ times Plaintiff's hourly wage.

148.     Defendants failed to pay Plaintiff for all hours worked in excess of forty hours per week at a rate of 1 and ½ times Plaintiff's hourly wage.

149.      Plaintiff made a demand for payment of overtime to Defendants.

150.     Defendants intentionally and without good faith justification refused to pay Plaintiff for overtime.

## PLAINTIFF'S FIFTH CLAIM FOR RELIEF

### (Violation of First Amendment Freedom of Speech)

151.     Plaintiff hereby incorporates the allegations in paragraph 1-150 above as if fully set forth herein.

152.     Plaintiff's speech regarding overtime payment was not expressed during the ordinary course of her job responsibilities.

153.     Plaintiff exercised her right to freedom of speech as afforded by the First Amendment to the United States Constitution by speaking out on matters of public concern.

154.     The value of Plaintiff's speech outweighs any possible negative or disruptive impact on the Defendants' performance of public services.

155.     Defendants intentionally and willfully retaliated against Plaintiff for exercising her freedom of speech.

156.     Defendant's conduct of cutting Plaintiff's hours, excessive write ups, and eventual termination was substantially motivated by Plaintiff's exercise of freedom of speech.

157.     Defendant's conduct was willful and wanton and engaged in maliciously or with reckless disregard or callous indifference to Plaintiff's protected rights.

158.     As a result of Defendants' misconduct, Plaintiff has been damaged.

**PLAINTIFF'S SIXTH CLAIM FOR RELIEF**

**(Wrongful Discharge in Violation of Public Policy)**

159.     Plaintiff hereby incorporates the allegations in paragraph 1-158 above as if fully set forth herein.

160.      Defendants directed Plaintiff to violate specific statutory regulations public health, safety or welfare when Defendants instructed Plaintiff to be on-duty without compensation in violation of FLSA, CWCA, and Colorado Division of Labor Wage Orders.

161.     Defendants' instructions to Plaintiff to be on-duty without compensation undermine a clearly expressed public policy relating to employees basic rights as a worker.

162.     Defendants change to the essential functions of Plaintiff's job while plaintiff was recovering from a work related injury undermines a clearly expressed public policy relating to employees basic rights as a worker.

163.     Defendant's termination of Plaintiff due to her alleged exhaustion of her FMLA time off undermines a clearly expressed public policy relating to employees basic rights as a worker.

164.     Defendant's termination of Plaintiff due to her work related injury resulting in a lifting restriction undermines a clearly expressed public policy relating to employees basic rights as a worker.

## PLAINTIFF'S SEVENTH CLAIM FOR RELEIF

### (Americans with Disabilities Act - Hostile Work Environment)

165.     Plaintiff hereby incorporates the allegations in paragraph 1-164 above as if fully set forth herein.

166.     Plaintiff's work environment permeated with discriminatory intimidation and ridicule, sufficiently severe and pervasive enough to alter the conditions of Plaintiff's employment and create an abusive working environment.

167.     Plaintiff was subject to excessive and unwarranted disciplinary action after bringing legitimate concerns regarding on-duty compensation and the Comp Time Agreements to the WCCO and BOCC.

168.     After bringing legitimate concerns to the WCCO and BOCC Plaintiff was scheduled to work less desirable hours with additional and multiple back to back Primary and Backup on-duty shifts.

169.     The frequency of the discriminatory conduct against Plaintiff increased in 2009

and 2010.


170.     The severity of the Defendant's conduct unreasonably interfered with Plaintiff's

work performance up to and including the Defendant's termination of Plaintiff's

employment.


171.     Defendant's conduct was unwarranted and humiliating.


## PLAINTIFF'S EIGTH CLAIM FOR RELIEF

### (Americans with Disabilities Act - Discrimination)


172.     Plaintiff hereby incorporates the allegations in paragraph 1-171 above as if fully

set forth herein.


173.     Plaintiff was disabled as defined by the Americans with Disabilities Act,

hereinafter ("ADA").


174.     Plaintiff was qualified, with or without reasonable accommodation, to perform the

essential functions of the job held or desired.

175.     Defendants' unilaterally and intentionally amended the "essential functions" of

Plaintiff's job to exclude her from passing a job performance physical.

176.     Plaintiff was terminated from employment with Defendants because of her

disability.

177.     As a result of Defendant's conduct, Plaintiff has been and continues to be

damaged.

## <u>PLAINTIFF'S NINETH CLAIM FOR RELIEF</u>

### (Family and Medical Leave Act – Interference/Retaliation)

178.     Plaintiff hereby incorporates the allegations in paragraph 1-177 above as if fully

set forth herein.

179.     Plaintiff engaged in a protected activity by requesting and being approved of

Family and Medical Leave Act, hereinafter ("FMLA") time off.

180.     Defendants took an action that a reasonable employee would have found

materially adverse by terminating Plaintiff's employment for allegedly exhausting her

FMLA time off and becoming injured on the job.

181.     There exists a causal connection between the protected activity and the adverse

action.

182.     As a result of Defendant's conduct, Plaintiff has been and continues to be

damaged.

## PLAINTIFF'S TENTH CLAIM FOR RELIEF

### (Wrongful Discharge – Public Policy)

183.     Plaintiff hereby incorporates the allegations in paragraph 1 – 182 above as if fully

set forth herein.

184.     The employer directed the employee to perform an illegal act as part of the

employee's work related duties

185.     Plaintiff was directed by WCCO that she had exhausted her FMLA time and had

to perform the "essential functions" or her job or be subjected to termination.

186.     Plaintiff was entitled to FMLA time off, entitled to submit a workers

compensation claim, and entitled to reasonable accommodation all of which were denied

by the Defendants in violation of statute or clearly expressed public policy.

187.     The action directed by the employer would violate a statute or clearly expressed public policy.

188.     Plaintiff was terminated as a result of taking FMLA, submitting a workers compensation claim, and for requesting reasonable accommodations to continue working for the WCCO.

189.     Defendants were aware or should have been aware that Plaintiff was entitled to FMLA time off, entitled to submit a workers compensation claim, and entitled to reasonable accommodation without suffering termination from employment.

## PLAINTIFF'S ELEVENTH CLAIM FOR RELIEF

### (Deprivation of Due Process - 42 U.S.C. 1983)

190.     Plaintiff hereby incorporates the allegations in paragraph 1 – 190 above as if fully set forth herein.

191.     The acts or omissions of Defendant's as alleged herein, were intentional and resulted in depriving Plaintiff of her fundamental due process rights. Such acts include denying Plaintiff notice and an opportunity to be heard prior to her termination on September 17, 2010.

192.     All acts or omissions committed by all Defendants have occurred while all Defendants were acting under color of law.

193.     Defendant's actions or omissions as alleged herein constitute illegal conduct and/or a pattern and practice of such conduct to engage in violations of the constitutional rights of Plaintiff in violation of 42 U.S.C. §1983.

194.     Defendant's abused statutory power as a public entity and practiced unauthorized excess of authority over Plaintiff in her termination.

195.     Upon information and belief, including acts or omissions as alleged herein, give rise to the belief that Defendant's violated Plaintiff's constitutionally protected rights.

196.     Defendant BOCC is "person" for purposes of 42 U.S.C. §1983 liability.

197.     Defendant WCCO is "person" for purposes of 42 U.S.C. §1983 liability.

198.     Defendant Patrick C. Allen, M.D. is "person" for purposes of 42 U.S.C. §1983 liability.

199.     Defendant Mark Ward is "person" for purposes of 42 U.S.C. §1983 liability.

200.     Defendant James A. Wilkerson, M.D.  is "person" for purposes of 42 U.S.C. §1983 liability.

201.     All conduct of Defendants as alleged herein was oppressive and caused injury to Plaintiff, or was done consciously and willfully in pursuit of a course of conduct that created substantial risk of injury to Plaintiff.

## PLAINTIFF'S TWELFTH CLAIM FOR RELIEF

### (Breach of Contract)

202.     Plaintiff hereby incorporates the allegations in paragraph 1-201 above as if fully set forth herein.

203.     Plaintiff entered into a contract with Defendant's WCCO and BOCC titled Compensation Time Agreement dated November 29, 2009.

204.     Plaintiff satisfied her obligations under the Agreement by continuing working for Defendants and accumulating comp time.

205.     Defendant's breached the Agreement by restricting Plaintiff's accumulation of comp time, assigning less favorable regular office hours and Primary on-duty shifts and eventually terminating Plaintiff's employment.

206.     As a direct and proximate result of Defendant's breach, Plaintiff suffered, and

continues to suffer, injury, including, but not limited to, pecuniary losses including, but

not limited to, loss of wages, loss of benefits, attorney's fees and costs, diminished

opportunities for career advancement, and damage to her reputation.


**PLAINTIFF'S ELEVENTH CLAIM FOR RELIEF**

**(Violation of Equal Protection)**


207.     Plaintiff hereby incorporates the allegations in paragraph 1 –206 above as if fully

set forth herein.


208.     Defendants classified WCCO employees into two distinct categories comprised of

1) WCCO employees that signed the Comp Time Agreements and 2) WCCO employees

that did not sign the Comp Time Agreements


209.     WCCO employees that did not sign the Comp Agreement or later opted out of the

Comp Agreement were not permitted to work overtime, scheduled to work less desirable

Office Hour shifts, and scheduled less desirable on-duty shifts.

## **PLAINTIFF'S TWELTH CLAIM FOR RELIEF**

### **(Title VII of the Civil Rights Act - Discrimination)**

210.     Plaintiff hereby incorporates by reference and adopts paragraphs 1 through 209 as if fully set forth herein.

211.     Ms. Belmarez, as a female, was at all times within the class of employee protected by Title VII of the Civil Rights Act of 1964, as amended.

212.     Defendants treated Ms. Belmarez, a female, less favorably then her similarly situated male counterparts.

213.     At all times, Ms. Belmarez performed the functions of her job competently and was appropriately qualified for her position as MI for the WCCO.

214.     Despite Ms. Belmarez's qualification and exemplary job performance, Defendants unduly scrutinized her compared to male co-workers, did not allow her to work with a lifting restriction, denied her reasonable accommodations for her work related injury, and terminated her employment, in whole or in part, because of her gender, while retaining less-qualified and similarly situated male employees.

215.     Plaintiff's position was filled by a male.

216.     Defendant's conduct gives rise to the inference of unlawful discrimination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this honorable Court enter judgment in her favor and against Defendants jointly and severally as follows:

A.  An order entry of a judgment for restitution and compensatory damages, including, but not limited to damages for lost wages, and injury to reputation in an amount to be determined at trial;

B.  Back pay;

C.  Front pay;

D.  Exemplary and punitive damages in amount commensurate with Defendant's ability to pay and to deter similar future conduct;

E.  Reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988 and CWCA;

F.  Unpaid overtime;

G.  Punitive damages equal to overtime compensation awarded;

H.  Punitive damages equal to 50% of unpaid overtime pursuant to CWCA;

I.  Pre and post judgment interest in an amount to be determined at trial;

J.   Such other and further relief including equitable remedies as this honorable court deems

just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues raised.

Respectfully submitted this 7th day of December, 2011.

/s Robert J. Herrera
_____

Robert J. Herrera, Esq. #37093

HAGEN & MELUSKY, INC.
1613 Pelican Lakes Point
Suite B, Lower Level
Windsor, Colorado 80550
Phone:  970-686-6618
Fax:  970-686-2899
Email: robert@h-mlegal.com
Attorney for Plaintiff

## OFFICE OF THE WELD COUNTY CORONER & MEDICAL EXAMINER

### STANDARD OPERATING GUIDELINES

### CALL RESPONSE

## SCOPE

The purpose of this SOG is to document the response requirements and expectations as practiced by the Office of the Weld County Coroner & Medical Examiner.

Notification of a death, within our jurisdiction, will normally be made by:

  1. The Greeley/Weld County Regional Communications Center.
  2. The North Colorado Medical Center Administrative Representative.
  3. The Hospice & Palliative Care of Northern Colorado In-Patient Unit.

The preferred method of contact is to the primary investigator's pager but, occasionally, first contact may be to the primary's cell phone. Since the WCCO schedule is available to mortuaries, the media and the Larimer County Coroner's Office contact may be made by one of these entities.

While any notification requires an immediate **initial response** to the reporting entity, the level of follow-up response will depend upon the nature of the death.

  1. Any unattended death requires immediate **physical response**.
  2. Any traumatic or unexpected Emergency Department death requires immediate **physical response**.
  3. An expected ED or in-patient death may be handled with a **telephone response** and follow-up record requests.
  4. An in-patient death stemming from trauma, unexplained/suspicious origin or medical procedure may be initially handled over the telephone with a **delayed response.**
  5. Hospice IPU deaths, not stemming from any criminal activity, can normally be handled with a **telephone response** to rule out non-contributory injuries or to ensure the correct manner of death.

The primary and backup investigators are expected to remain in a state of readiness that will ensure a timely response.

## INITIAL RESPONSE

Once contacted, by pager, the primary investigator is expected to call back within 5 minutes to determine the nature of the call and the level of follow-up response that will be required. Otherwise, the notifying entity may determine that the lack of response requires that they contact the backup investigator.

## PHYSICAL RESPONSE

During normal waking hours (i.e. 0600–2200 hours), once it has been determined that a physical response is required, the primary investigator will advise the backup investigator that they are

**EXHIBIT**

A

committed to a case. This will put the backup on notice to be in an increased state of readiness and subject to primary response guidelines, in the event of another call. If the primary investigator expects to be out of service for an extended period of time, it is advisable to notify Dispatch so that additional calls can be directed to the backup investigator. Once the primary investigator is in a position to take another call, the backup investigator will be notified.

The primary investigator will then make every effort to be en route within 20-30 minutes of being notified and proceed directly to the scene. It is understood that arrival time is dependent upon variables such as distance, traffic and weather. Safety and compliance with traffic laws should be the top priority while in transit.

A professional appearance must be maintained at all times in terms of personal hygiene and dress.

## TELEPHONE RESPONSE

In the course of the initial response it may be determined that, based upon circumstances and/or medical history, a primary care physician is likely to sign the death certificate. In such a case information may be taken over the telephone and medical records requested during normal working hours. If there is some doubt, the body may be placed ON HOLD until the death can be reviewed with the PCP and/or pathologist.

## DELAYED RESPONSE

In the event of a natural ED death, without a PCP, or an in-patient death, due to traumatic or suspicious circumstances, initial information may be taken over the telephone. The body should be placed ON HOLD until normal working hours at which time photographs can be taken and medical records requested. Consultation with the pathologist will determine if an autopsy is warranted.

## STAFF RESPONSE

In the event that the primary and backup investigators expect to be committed for an extended period of time or there is a mass casualty event, the Emergency/Event Notification system should be activated. At this time Gracie Marquez (970-978-8036) is the only person trained on the E/EN system.

APPROVED: _____          _____
Mark Ward, Chief Deputy Coroner              Dr. Patrick C. Allen, Coroner/ME

Date: _8·20·2009_                            Date: _8/20/09_



**Division of Civil Rights**
Steven Chavez
Director of Division of Civil Rights

1560 Broadway, Suite 1050
Denver, CO 80202
(303) 894-2997
(303) 894-7830 (fax)
(800) 262-4845 (toll free)

200 West "B" Street, Suite 234
Pueblo, CO 81003
(719) 542-1298
(303) 869-0498 (fax)

222 S. 6th Street, Suite 301
Grand Junction, CO 81501
(970) 248-7303
(970) 248-7304
(970) 242-1262 (fax)

http://www.dora.state.co.us/civil-rights/

John W. Hickenlooper
Governor

Barbara J. Kelley
Executive
Director

**RECEIVED**

SEP 1 3 2011

September 8, 2011

Corinna Pina-Belmarez
500 Pine Drive
WINDSOR, CO 80550

Charge Number: E20110347
Corinna Pina-Belmarez v. Office of the Weld County Coroner

Dear Corinna Pina-Belmarez,

## Notice of Right to Sue

This letter is to inform you that your charge, captioned above, is being closed effective the date
shown herein for the following reasons:

> You have requested a Right To Sue letter from the Colorado Civil Rights Division
> and more than one hundred and eighty days have passed since the filing of your
> charge. Pursuant to C.R.S. 24-34-306 (15), a claimant's request for notice of right
> to sue, made after the expiration of one hundred eighty days following the filing
> of the charge shall be granted promptly.

We are terminating our action on your charge at your request.

> *If the Charging Party wishes to file a civil action in a district court in this state,
> which action is based on the alleged discriminatory or unfair practice that was
> the subject of the charge s/he filed with the commission, s/he must do so: Within
> ninety days of the date of mailing of this notice.*

> *If the Charging Party does not file an action within the time limits specified
> above, such action will be barred and no district court shall have jurisdiction to
> hear such action. [C.R.S. 24-34-306 (2)(b)(I)(B&C)]*

**Please be advised that the issuance of a notice of right to sue shall terminate all further
processing of any charge by the division; shall cause jurisdiction of the commission to
cease; and shall constitute final agency action and exhaustion of adminstrative remedies
and proceedings pursuant to Part 3 of Article 34 of Title 24, C.R.S. (1988), as amended.
Neither the division nor the commission will provide assistance in assessing the claim or
providing legal assistance in the filing or framing of any legal action.**

L-12, RTS Emp Letter

I



EXHIBIT

B

If you have any questions regarding this decision, feel free to contact this office at (303) 894-2997.

Sincerely,

Steven Chavez,
Director

## CERTIFICATE OF MAILING

This is to certify that on this date, **Friday, September 09, 2011,** a true and exact copy of the closing documentation of the above-referenced charge was deposited in the United States mail, postage prepaid, addressed to the parties listed below.

Charge No: E20110347
EEOC No: 32A-2011-00225

Corinna Pina-Belmarez
500 Pine Drive
WINDSOR, CO 80550

Timothy McCarthy, Esq.
Jo Anne Hagen, Esq.
Hagen & Melusky
1613 Pelican Lakes Point,
Ste. B, Lower Level
WINDSOR, CO 80550

Weld County Government
ATTN: Patricia S Russell, SPHR
Director of Human Resources
915 10th Street
PO Box 758
Greeley, CO  80632

**Tanya Avakian**
**Administrative Assistant III**
**Colorado Department of**
**Regulatory Agencies**
**Division of Civil Rights**