**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-03179-REB-MJW

CORINNA PINA-BELMAREZ,

       Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF WELD COUNTY COLORADO,
THE OFFICE OF THE WELD COUNTY CORNER/MEDICAL EXAMINER,
PATRICK C. ALLEN, M.D., in his individual capacity,
MARK WARD, in his individual capacity, and
JAMES A. WILKERSON IV, M.D., in his individual capacity,

       Defendants.

---

## ORDER RE: MOTION FOR PARTIAL DISMISSAL OF CLAIMS

---

**Blackburn, J.**

      The matters before me are defendants' (1) **Motion for Partial Dismissal of Claims** [#15][1] filed January 30, 2012; and (2) **Motion for Leave To Exceed the Court's Page Limit** [#14] filed January 30, 2012.  I grant the motion to exceed the page limitations, and grant in part and deny in part the motion to dismiss.

## I.  JURISDICTION

      I have jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

      When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the

---

[1] "[#15]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

meaning of Fed.R.Civ.P. 8(a).  For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  ***Kansas Penn Gaming, LLC v. Collins***, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court supplanted it in ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  Pursuant to the dictates of ***Twombly***, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'"  ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Twombly***, 127 S.Ct. at 1974).  "This pleading requirement serves two purposes:  to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim."  ***Kansas Penn Gaming***, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true.  ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002).  Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss.  ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted).  ***See also Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48

(10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting *Twombly*, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S.Ct. at 1949.  *See also Ridge at Red Hawk*, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level."  *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 127 S.Ct. at 1965).  The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent."  *Robbins*, 519 F.3d at 1248.  Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Id.*

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S.Ct. at 1950; *see also Kansas Penn Gaming*, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Dias v. City*

*and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127

S.Ct. at 1965) (internal quotation marks omitted).

### III.  ANALYSIS

Plaintiff formerly was employed as a "Medicolegal Investigator" ("MI") with the Weld

County Coroner/Medical Examiner ("WCCO").  In that position, she was classified as a

non-exempt employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-

219.  On June 16, 2009, the Board of County Commissioners ("BOCC") decided to pay off

accumulated comp time for all WCCO MIs, as a result of which, plaintiff received a payout

of $9,924.88.

WCCO subsequently implemented a policy restricting accumulated comp time to

no more than 80 hours total, after which any further time would be counted and paid out

as overtime.  This agreement was memorialized in a contract, which plaintiff signed in

November 2009.  Plaintiff complains that thereafter her supervisors limited her to no more

than 30 to 40 hours of accumulated comp time.  Plaintiff alleges that she "voiced

concerns" regarding the application of the comp time agreement as well as regarding

compensation for her on-duty time to the BOCC, WCCO, and defendant Mark Ward, the

then Chief Deputy Weld County Coroner (now Coroner).

For reasons not apparent from the record, plaintiff took a leave of absence

pursuant to the Family and Medical Leave Act ("FMLA") from June 24 to July 2, 2009.

She took a second such leave from May 3 to June 14, 2010.  During this period, on June

4, 2010, the WCCO circulated an amended job description for the MI position that listed

as an essential job function the ability to lift, carry, or otherwise move 150 to 200 pounds.

Because plaintiff subsequently returned to work with a temporary lifting restriction of no

4

more than 30 pounds, she was not assigned to full duty until her medical restrictions were lifted the following month.

On August 6, 2010, plaintiff suffered a work-related injury and again was placed on lifting restrictions, this time of no more than 25 pounds.  Plaintiff alleges that she provided the WCCO with a list of reasonable accommodations that would allow her to continue her employment, but the WCCO refused her request and, instead, placed her on FMLA leave. On September 17, 2010, after allegedly exhausting her FMLA leave, plaintiff was terminated for inability to perform the essential functions of the MI job. This lawsuit followed.  The plaintiff alleges a plethora of claims, including those that are the subject of this motion.[2]  I consider them *seriatim.*

Plaintiff's First and Second Claims for Relief allege a violation of the FLSA's overtime pay and compensation time pay requirements, respectively.  The FLSA requires employers to compensate an employee for any hours worked in excess of 40 hours per week "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The FLSA permits a state or political subdivision thereof to offer its employees, "in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section."  *Id.* § 207(o)(1).  Pursuant to her November 2009 comp time agreement, plaintiff accepted such an alternative arrangement.  Nothing in the complaint suggests that this contract was not valid and enforceable.  I thus conclude that plaintiff has no viable claim for overtime pay under the

---

[2]  Plaintiff concedes that her Fourth Claim for Relief, under the Colorado Wage Act, is not feasible, and defendants' motion to dismiss that claim thus will be granted.

FLSA.  Accordingly, defendants' motion to dismiss this claim will be granted.


Plaintiff's claim for violation of the comp time provisions of the FLSA does not allege that plaintiff was not allowed to take all comp time she actually earned.  Instead, plaintiff asserts that after complaining about the comp time agreement, she was scheduled to work less desirable shifts, sent home from work arbitrarily and without regard to her workload, and evaluated negatively based on her accumulated comp time.  These complaints may involve a violation of the anti-retaliation provisions of the FLSA, but they do not state a claim for violation of the comp time requirements themselves.  Accordingly, plaintiff's Second Claim for Relief will be dismissed.

Plaintiff's Third Claim for Relief does assert a violation of the FLSA's anti-retaliation provisions, pursuant to which it is unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  A complaint may be oral or written, but in either instance, "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection."  *Kasten v. Saint-Gobain Performance Plastics Corp.*, – U.S. –, 131 S.Ct. 1325, 1335, 179 L.Ed.2d 379 (2011).  *See also  Valerio v. Putnam Associates*, 173 F.3d 35, 44 (1st Cir. 1999) ("[N]ot all abstract grumblings will suffice to constitute the filing of a compliant with one's employer.").


Although I agree with defendants that plaintiff's allegation that she "voiced

concerns" about her comp time agreement is itself too vague and conclusory to state a

plausible claim for relief, the broader allegations of the complaint flesh this assertion out in

sufficient detail to withstand dismissal.  The complaint makes clear that plaintiff's

concerns included compensation for on-duty time and the application of the comp time

agreement and that she made these concerns known to Mr. Ward.  In addition, plaintiff

does specify a number of her concerns elsewhere in the complaint, for example, the limits

on the amount of comp time she was allowed to accrue, the requirement that she

schedule comp time in advance or a the direction of a supervisor, and the allegation that

plaintiff often was sent home from work arbitrarily to avoid accumulation of comp time.

Although the complaint arguably could do a better job of tying these specific concerns to

those plaintiff allegedly voiced to her employer, I am unwilling to say at this early juncture

that she can assert no plausible claim for relief on this basis.  The motion to dismiss

plaintiff's Third Claim for Relief therefore will be denied.

In her Fifth Claim for Relief, plaintiff asserts a violation of her First Amendment

rights.  In the context of public employment, an employee's free speech rights are

coterminous with her rights as a citizen to speak on matters of public concern.  ***See***

***Borough of Duryea, Pennsylvania v. Guarnieri***, – U.S. –,131 S.Ct. 2488, 2493, 180

L.Ed.2d 408 (2011); ***Connick v. Myers***, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75

L.Ed.2d 708 (1983).  Otherwise,

> when a public employee speaks not as a citizen upon matters
> of public concern, but instead as an employee upon matters
> only of personal interest, absent the most unusual
> circumstances, a federal court is not the appropriate forum in
> which to review the wisdom of a personnel decision taken by
> a public agency allegedly in reaction to the employee's
> behavior.

*Connick*, 103 S.Ct. at 1690.  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Id.* (footnote omitted).

Nothing in plaintiff's complaint suggests that the concerns she allegedly brought to defendants' attention were anything more than matters of private concern.  Plaintiff alleges that she was retaliated against for complaining about overtime pay.  (**Compl. ¶ 152 at 26.**)  Nothing in the complaint makes manifest that these complaints had any context broader than plaintiff's own paycheck.  The various larger health and safety concerns plaintiff suggests she made known to defendants are set forth only in her response to the motion to dismiss, not in the complaint itself, and therefore are not effective to prevent dismissal of this claim.

Plaintiff's Sixth and Tenth Claims for Relief allege that she was wrongfully discharged in violation of public policy.  Defendants claim that they are entitled to immunity from these claims pursuant to the Colorado Governmental Immunity Act ("CGIA") at §24-10-106(1), C.R.S.  I agree, at least to the extent that these claims purport to be asserted against the BOCC and the WCCO.[3]  The CGIA preserves the sovereign immunity of a public entity except in a limited number of specifically defined categories, none of which is applicable here.  *See* §24-10-106(1)(a)-(h), C.R.S.  Plaintiff's allegation of willful and wanton conduct does not cure this fundamental deficiency in her pleading,

---

[3]  State officials sued in their individual capacities are not entitled to sovereign immunity unless the state ultimately would be liable for the payment of damages against them or sovereign immunity otherwise bars the action against the public entity.  *Middleton v. Hartman*, 45 P.3d 721, 726-28 (Colo. 2002).  Because the allegation of willful and wanton conduct against a state employee absolves the state of liability for any judgment against that employee, *see id.* at 728 (citing §24-10-110(1)(b)(I), C.R.S.), the individual defendants still may be liable on these claims.

and her assertion of a host of new (and completely irrelevant) facts in her response brief likewise fails to overcome the county defendants' immunity.  These claims therefore also will be dismissed insofar as they are asserted against the BOCC and the WCCO.

Plaintiff's Seventh and Eighth Claims for Relief allege violations of the Americans With Disabilities Act ("ADA").  The first purports to assert a claim for discrimination based on a hostile work environment, which the Tenth Circuit has recognized as actionable.  *See Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1155-56 (10th Cir. 2004).  Because the ADA is interpreted consistently with Title VII, plaintiff must allege facts sufficient to demonstrate, *inter alia*, that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *EEOC v. Dillon Companies, Inc.*, 2011 WL 1226215 at *2 (D. Colo. March 30, 2011) (quoting *Penry v. Home Loan of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998), *cert. denied*, 119 S.Ct. 1334 (1999)) (alteration in *Dillon*).

The complaint comes nowhere near making out this essential element of a hostile work environment claim.  Plaintiff alleges merely that she was subject to "excessive and unwarranted disciplinary action"[4] and scheduled to work less desirable hours and multiple back-to-back shifts after complaining about compensation for on-duty time and comp time.  (**Compl. ¶¶** 167-168 at 28.)  These allegations are too vague, conclusory, and thin to allege the type of severe and pervasive harassment that would support a hostile work

---

[4]  Plaintiff specifically identifies only two instances in which she received Performance Correction Notices shortly after receiving her accumulated comp time payout in June 2009.  (**Compl. ¶¶** 86-87 at 15.) She does not specify what alleged infractions the notices purported to address, whether they were unwarranted, how they were resolved (if at all), and what consequences attended their issuance.

environment claim.

To assert a claim for discrimination under the ADA, plaintiff must allege facts sufficient to show, *inter alia*, that she was qualified to perform the essential functions of her job with or without reasonable accommodation.  ***Hennagir v. Utah Department of Corrections***, 587 F.3d 1255, 1261 (10th Cir. 2009).  A primary question in determining whether the lifting requirements of the MI job are essential job functions is whether the employer "actually requires all employees in the particular position to satisfy the alleged job-related requirement."  ***Davidson v. America Online, Inc***., 337 F.3d 1179, 1191 (10th Cir. 2003).  Plaintiff has alleged that a male employee of the WCCO was placed on light duty after lifting restrictions were imposed on him.  (**Compl.** ¶ 36 at 8 & ¶ 111 at 19.) Thus, although the court should not "second guess the employer or to require him to lower company standards," ***Davidson***, 337 F.3d at 1191, the allegation suggests that the lifting requirement was neither uniformly enforced nor consistent with business necessity, *id.*  I therefore find and conclude that plaintiff's complaint adequately pleads a plausible claim for discrimination under the ADA.

Although plaintiff has designated her Ninth Claim for Relief as "Family and Medical Leave Act – Interference/Retaliation," these are actually separate causes of action, with different elements, under the FMLA.  ***See Campbell v. Gambro Healthcare, Inc.***, 478 F.3d 1282, 1287 (10th Cir. 2007).  The way in which plaintiff has pleaded this cause of action, however, leads me to conclude that she, in fact, has asserted only a retaliation

claim.[5]  A prima facie case of FMLA retaliation requires proof (1) that plaintiff engaged in a

protected activity; (2) that her employer took actions that a reasonable employee would

have found materially adverse; and (3) that there was a causal connection between the

protected activity and the adverse action, that is, that there was bad faith or retaliatory

motive on the part of the employer.  *Id.*  In response, defendants argue that plaintiff

cannot make out such a claim because of her inability to perform the allegedly essential

lifting functions of the job.  In essence, defendants assert that plaintiff cannot overcome

their legitimate, non-discriminatory reason for her termination.

There are at least two problems with this argument.  First, although FMLA

retaliation claims are analyzed under the burden-shifting analysis developed in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973), *see id.*, that framework is applicable only in the context of a motion for summary

judgment, and has no relevance to a plaintiff's pleading burden under Rule 12(b)(6), *see*

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511-14, 122 S.Ct. 992, 997-99, 152

L.Ed.2d 1 (2002); *Negrete v. Maloof Distributing L.L.C.*, 2006 WL 4061178 at*7 (D.N.M.

Oct. 17, 2006); *Yonker v. Centers for Long Term Care of Gardner, Inc.*, 2006 WL

516851 at*4 (D. Kan. March 2, 2006).

Second, and as noted above, the complaint adequately alleges that the lifting

---

[5]  To establish an interference claim, plaintiff must plead facts plausibly demonstrating, *inter alia*, "that some adverse action by the employer interfered with h[er] right to take FMLA leave."  *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (citation and internal quotation marks omitted; alterations in original).  In this regard, plaintiff "must show that she was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."  *Id.*  Although plaintiff argues in her response that defendants miscalculated her FMLA leave and that she still had some leave pending at the time of her termination, nothing in her complaint itself can fairly be read to suggest that any of these scenarios is applicable here.  Defendants' motion for summary judgment as to this aspect of this claim therefore will be granted.

requirement was not uniformly applied.  A plaintiff may create a triable issue of pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." ***Swackhammer v. Sprint/United Management Co.***, 493 F.3d 1160, 1167 (10th Cir. 2007) (citation and internal quotation marks omitted).  One common method of doing so is to demonstrate differential treatment between similarly situated employees. ***See id.*** at 1167-68.  I thus deny defendants' motion to dismiss plaintiff's Ninth Claim for Relief insofar as it asserts a claim for retaliation under the FMLA.

Plaintiff's Eleventh Claim for Relief asserts a violation of her due process rights, specifically, that she was denied notice and an opportunity to be heard prior to her termination.  (**Compl. ¶** 191 at 32.)  However, her complaint fails to allege that she held any protectible property interest in her job.  "The Fourteenth Amendment, by its terms, guarantees due process only for the deprivation of 'life, liberty, or property.'" ***Lauck v. Campbell County***, 627 F.3d 805, 812 (10th Cir. 2010) (quoting U.S. CONST., amend. XIV, § 1).  "A government employee may have a property interest in his position, but only if he has a legitimate claim of entitlement to that position." ***Id.*** (citation and internal quotation marks omitted).  To show such an entitlement, the employee must point to some specific statutory provision or contractual right. ***Id.***  Plaintiff has alleged nothing that would suggest that she had any such protectible interest in her position with the WCCO.  I therefore grant the motion to dismiss this claim.

Plaintiff also has alleged a breach of her comp time agreement.  She asserts that

defendants' breached the agreement by restricting her accumulation of comp time and assigning her less favorable office hours and on-duty shifts.  (**Compl. ¶ 205 at 34.**) Although defendants complain that plaintiff has failed to allege that the agreement required that plaintiff be provided with better hours and/or allowed to accumulate more comp time, I believe such allegations are fairly implied by the assertion of a breach of the contract.  Moreover, it is impossible based on the record before me to determine whether such terms in fact were part of the contract, as defendants failed to attach a copy of the agreement to their motion to dismiss, although it would have been entirely proper to do so.  *See Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir.), *cert. denied*, 120 S.Ct. 405 (1999).  I therefore deny the motion to dismiss this claim.

Plaintiff's Thirteenth Claim for Relief (mis-designated in the complaint as the Eleventh Claim for Relief), asserts a violation of her plaintiff's equal protection rights.  The allegations attendant on this claim are vague, unsubstantiated in any particular, and frankly, almost nonsensical.[6]  I thus grant the motion to dismiss this claim as well.

Three collateral issues remain.  First defendants argue that the WCCO is not a proper party to this action because it is not an entity separate from the county itself.  This argument is premised on the authority of *Stump v. Gates*, 777 F.Supp. 808 (D. Colo. 1991), *aff'd*, – Fed. Appx. –, 1993 WL 33875 (10th Cir. Feb. 11, 1993). which confirms that county or municipal offices or departments that do not exist as separate juridical entities

---

[6]  Plaintiff alleges in conclusory fashion that defendants classified WCCO employees into two categories based on whether they signed the comp time agreement.  (**Compl. ¶ 208 at 35.**)  She then alleges that employees who did not sign the agreement or later opted out of it were precluded from working overtime and scheduled to work less desirable shifts.  (*Id*. ¶ 209 at 35.)  Given that plaintiff admits she signed the comp time agreement and never alleges that she opted out of it, it is not at all clear how she was harmed by the alleged classification.

are not "persons" subject to suit under section 1983. *Id.* at 815-16.  None of plaintiff's

remaining claims, however, implicates section 1983.[7]  Defendants have not shown that

this doctrine has application outside that particular context, and I have found no case so

holding.  Their motion to dismiss WCCO on that basis therefore will be denied.

Second, defendants maintain that Messrs. Wilkerson and Allen are not subject to

liability under the FLSA because they were not plaintiff's employers.  I agree.  The FLSA

defines an "employer" to "include[] any person acting directly or indirectly in the interest of

an employer in relation to an employee and includes a public agency."  29 U.S.C. §

203(d).  Although this definition has been characterized as "expansive," it must be shown

that the person or entity sought to be charged has "substantial control of the terms and

conditions of the work of [its] employees."  *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct.

427, 431, 38 L.Ed.2d 406 (1973).  *See Donovan v. Tavern Talent and Placements,

Inc.*, 1986 W L 32746 at *2-3  (D. Colo.  Jan. 8,1986) (noting that in determination of

employer stats, "'economic reality' prevails over technical common law concepts of

agency" and that "[t]here may be several simultaneous employers").  Nothing in plaintiff's

complaint itself states or suggests that Messrs. Wilkerson or Allen had the type of control

over the terms and conditions of plaintiff's employment.  The motion to dismiss the FLSA

claims against these individual defendants therefore will be granted.

Third and finally, defendants argue that punitive damages are not available under

---

[7]  Following entry of this order, it appears to this court that the remaining claims are (1) retaliation
under the FLSA as against the BOCC, the WCCO, and Mr. Ward (Third Claim for Relief); (2) wrongful
discharge as against the individual defendants only (Sixth and Tenth Claims for Relief); (3) discrimination
under the ADA (Eighth Claim for Relief): (4) retaliation under the FMLA (Ninth Claim for Relief); (5) breach
of contract (Twelfth Claim for Relief); and (6) discrimination under Title VII (Fourteenth Claim for Relief, mis-
designated in the complaint as Twelfth Claim for Relief).

the FLSA.  This is an issue on which federal courts have not agreed, and the Tenth Circuit has yet to decide the issue.  ***See Conus v. Watson's of Kansas City, Inc.***, 2011 WL 4348315 at *3 & n.23 (D. Kan. Sept. 16, 2011) (citing cases).  Given the unsettled state of the law and the paucity of defendants' arguments on the matter, I decline defendants' invitation to dismiss this portion of plaintiff's FLSA claims at this juncture.[8]

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That defendants' **Motion for Leave To Exceed the Court's Page Limit** [#14] filed January 30, 2012, is **GRANTED**; and

2.  That defendants' **Motion for Partial Dismissal of Claims** [#15], filed January 30, 2012, is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.  That the motion is **GRANTED** with respect to

(1)  The First, Second, Fifth, Seventh, Eleventh, and Thirteenth (mis-designated as Eleventh, alleging violation of the Equal Protection Clause) Claims for Relief set forth in plaintiff's **Complaint and Demand for Jury Trial** [#1] filed December 7, 2011, which claims are **DISMISSED WITHOUT PREJUDICE**;

(2) The Ninth Claim for Relief as set forth in plaintiff's **Complaint and Demand for Jury Trial** [#1] filed December 7, 2011, insofar as it

---

[8]  Moreover, defendants' blanket assertion that governmental entities are not subject to punitive damages overstates the law.  "The general rule today is that no punitive damages are allowed unless expressly authorized by statute."  ***City of Newport v. Fact Concerts, Inc.***, 453 U.S. 247, 261 n.21, 101 S.Ct. 2748, 2756 n.21, 69 L.Ed.2d 616 (1981).  Thus, defendants' argument begs the more basic question whether the FLSA allows punitive damages.

asserts a claim for interference with plaintiff's rights under the Family and Medical Leave Act, which claim is **DISMISSED WITHOUT PREJUDICE**;

(3) The Sixth and Tenth Claims for Relief as set forth in plaintiff's **Complaint and Demand for Jury Trial** [#1] filed December 7, 2011, as against the Board of County Commissioners of Weld County, Colorado, and the Office of the Weld County Coroner/Medical Examiner only, which claims are **DISMISSED WITH PREJUDICE**;

(4) The Fourth Claim for Relief as set forth in plaintiff's **Complaint and Demand for Jury Trial** [#1] filed December 7, 2011, which claim is **DISMISSED WITH PREJUDICE**;

(5) Plaintiff's Third Claim for Relief as against defendants Patrick C. Allen, M.D., in his individual capacity, and James A. Wilkerson IV, M.D., in his individual capacity, only, which claims are **DISMISSED WITHOUT PREJUDICE**; and

b.  That in all other respects, the motion is **DENIED**.

Dated July 19, 2012, at Denver, Colorado.

BY THE COURT:

Bob Blackburn

Robert E. Blackburn
United States District Judge

16